**RESOLUTION TRUST CORPORATION,**
Plaintiff–Appellee,

v.

**Cornelius R. KENNELLY,**
Defendant–Appellant.

No. 94–35236.

United States Court of Appeals,
Ninth Circuit.

Submitted March 10, 1995 *.

Decided June 13, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

**820**

Ted Stepovich, Stepovich, Kennelly & Stepovich, Anchorage, AK, for defendant-appellant Cornelius R. Kennelly.

Timothy R. Byrnes, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, AK, and Miles H. Shore, Saul, Ewing, Remick & Saul, Philadelphia, PA, for plaintiff-appellee Resolution Trust Corp.

Before: PREGERSON, KOZINSKI, and LEAVY, Circuit Judges.

PER CURIAM:

The procedural history of this case is somewhat convoluted, but the facts relevant to this appeal are simple. Cornelius and So Nyum Kennelly ("Kennellys") invested in Triad American Energy, Inc. ("Triad"), a California limited partnership that sold windmill-generated electricity. To finance their Triad investment, the Kennellys executed a promissory note for $205,000 in favor of Atlantic Financial Federal of Pennsylvania ("AFF"). Triad did not prove to be as profitable as the Kennellys expected (or as profitable as its promoters had promised) and, after making several payments on the note, the Kennellys defaulted. AFF sued to collect on the note, and the Kennellys responded with several counterclaims and defenses, including securities fraud, alteration of the note, failure of consideration, and breach of fiduciary duty.

During the pendency of the litigation, AFF became insolvent and declared bankruptcy. The Office of Thrift Supervision appointed the Resolution Trust Corporation ("RTC") as receiver, and the RTC entered into a purchase and assumption agreement with Atlantic Financial Savings Bank of California ("AFSB"), pursuant to which the RTC transferred certain of AFF's assets (including the Kennellys' note) to AFSB. In due course, AFSB also failed and the RTC was appointed conservator.

The RTC thus entered this lawsuit in two capacities. As conservator for AFSB, the RTC substituted as the plaintiff in the action on the note; as receiver for AFF, the RTC substituted as the defendant on the Kennellys' counterclaims. The RTC moved for summary judgment, asserting that the Kennellys' defenses and counterclaims were all barred as a matter of law under 12 U.S.C. § 1823(e) and its common law precursor, the aptly-named *D'Oench, Duhme* doctrine. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The RTC also argued that it was entitled to be treated as a holder in due course of the

Kennellys' note, and that as such it took the note free of all personal defenses.

The Kennellys argued in response that the RTC could not invoke section 1823(e) or *D'Oench, Duhme* as a bar to their defenses and counterclaims because the note contained a variable interest rate and therefore was not a negotiable instrument under Pennsylvania law. Interpreting Pennsylvania's version of the Uniform Commercial Code, the district court held that the Kennellys' note was negotiable, and found that all of the Kennellys' defenses and counterclaims were barred as a matter of law under section 1823(e) and *D'Oench, Duhme.* The district court entered summary judgment for the RTC on the note and against the Kennellys on their counterclaims.

■ The Kennellys appear to confuse *D'Oench, Duhme* and the statutory bar embodied in section 1823(e) with the related, but wholly distinct, federal holder-in-due-course doctrine. Developed as a matter of federal common law, the federal holder-in-due-course doctrine affords federal bank regulatory agencies the same defenses accorded a holder-in-due-course under state law, even where those agencies do not meet the "technical state-law requirements for holder in due course status." *Sunbelt Sav., FSB v. Montross,* 923 F.2d 353, 355 (5th Cir.1991); *see also Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1248–49 (5th Cir.1990); *Firstsouth, F.A. v. Aqua Constr., Inc.,* 858 F.2d 441, 443 (8th Cir.1988); *FSLIC v. Murray,* 853 F.2d 1251, 1256–57 (5th Cir.1988); *FDIC v. Wood,* 758 F.2d 156, 159–61 (6th Cir.1985); *FDIC v. Gulf Life Ins. Co.,* 737 F.2d 1513, 1516–18 (11th Cir.1984); *Gunter v. Hutcheson,* 674 F.2d 862, 873 (11th Cir.1982). The

Kennellys argue that the negotiability requirement of holder in due course status is not one of these "technical requirements," and that the RTC cannot be treated as a holder in due course because the note they are seeking to enforce is not negotiable. *See Sunbelt Sav.,* 923 F.2d at 356.[1]

■ All this is irrelevant, however, when it comes to determining whether the Kennellys' defenses and counterclaims are barred by *D'Oench, Duhme* or section 1823(e). *Cf. Wood,* 758 F.2d at 159. The function and purpose of *D'Oench, Duhme* and section 1823(e) has been cogently explained as follows:

> *D'Oench* precludes obligors from asserting side deals or secret agreements which may mislead bank examiners against the [RTC] to diminish the value of written loan obligations. Section 1823(e) bars the use of extrinsic agreements to diminish or defeat the [RTC's] interest in an asset, unless the documents meet specific requirements. Together, their effect is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets."

*FDIC v. Zook Bros. Constr. Co.,* 973 F.2d 1448, 1450–51 (9th Cir.1992) (quoting *Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987)). Nothing about the application of the *D'Oench, Duhme* doctrine turns on the negotiability of the financial instrument being collected or the holder in due course status of the federal regulatory agency doing the collecting, nor does anything about the language of section 1823(e)[2] impose any such limitation on its application.

We therefore join the other circuits that have addressed the question in holding that

---

1. The Kennellys are only half right: Negotiability of the instrument acquired is certainly a requirement of holder in due course status, but it is far from clear that a note is rendered nonnegotiable simply because it contains a variable interest rate. *See* Uniform Commercial Code §§ 3–104, 3–106 (1991).

2. Section 1823(e) provides:
   No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section of section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

   (1) is in writing,
   (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
   (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
   (4) has been, continuously, from the time of its execution, an official record of the depository institution.

*D'Oench, Duhme* and section 1823(e) bar affirmative defenses and counterclaims without regard to the negotiability of the underlying obligation or the federal regulatory agency's status as a holder in due course. *See Randolph v. RTC*, 995 F.2d 611, 614–15 (5th Cir.1993) (per curiam); *Adams v. Madison Realty & Dev., Inc.*, 937 F.2d 845, 854–55 (3d Cir.1991); *FDIC v. P.L.M. Int'l, Inc.*, 834 F.2d 248, 255 (1st Cir.1987); *see also Newton v. Uniwest Fin. Corp.*, 967 F.2d 340, 346 n. 6 (9th Cir.1992).

■ Having cleared this hurdle, we consider only whether the Kennellys' claims and defenses are barred by *D'Oench, Duhme* and section 1823(e). The Kennellys do not dispute that the bulk of their claims are in fact barred. However, relying on dictum from *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), they argue that *D'Oench, Duhme* and section 1823(e) do not preclude them from raising a claim of fraud in the factum. The obligor in *Langley* argued that "the real defense of fraud in the factum ... would take the instrument out of § 1823(e), because it would render the instrument entirely void, thus leaving no 'right, title or interest' that could be 'diminished or defeat[ed].'" *Id.* at 93–94, 108 S.Ct. at 402–03 (citations omitted); *see* n. 2 *supra*. But the Supreme Court in *Langley* did not expressly hold that the defense of fraud in the factum is not barred by section 1823(e) and *D'Oench, Duhme;* instead, the Court found that "[p]etitioners ha[d] never contended ... that the alleged misrepresentations ... constituted fraud in the factum" and dismissed the defense. 484 U.S. at 94, 108 S.Ct. at 402.

■ We too decline to address whether the defense of fraud in the factum is barred under section 1823(e) or *D'Oench, Duhme* [3] because, like the petitioners in *Langley*, the Kennellys have never contended that the misrepresentations made by AFF concerning the quality of the Triad investment constitute fraud in the factum. Fraud in the factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Id.* at

93, 108 S.Ct. at 402. It therefore exists where the alleged misrepresentation relates to the character of a document being signed, as where one party believes he is giving out an autograph when he is in fact entering a contract. *See* Restatement (Second) of Contracts, § 163, Comments (a)–(c) (1981). The Kennellys claim only that they were "fraudulently induced" into entering the loan transaction, not that they were unaware of the nature of the documents they were signing. Indeed, the Kennellys acknowledged that they signed promissory notes to finance their investment and in fact made several payments on the note before defaulting, demonstrating their awareness of the nature and character of the obligation. They have not alleged, nor have they offered any evidence which if established would prove, fraud in the factum.

■ The Kennellys also argue they can defend against enforcement on the grounds that the note was altered after they signed it. The Kennellys signed the note in blank expecting AFF to fill in the amount of the loan at $200,000, and the bank filled in an amount of $205,000. This alteration could at best amount to fraud in the inducement or failure of consideration, claims that are barred under *D'Oench, Duhme* and section 1823(e). *See Langley*, 484 U.S. at 96, 108 S.Ct. at 403; *FSLIC v. Murray*, 853 F.2d 1251, 1255 (5th Cir.1988); *FDIC v. McClanahan*, 795 F.2d 512, 516 (5th Cir.1986); *FDIC v. Hatmaker*, 756 F.2d 34, 37 (6th Cir.1985).

\* \* \*

The note's negotiability is immaterial in determining whether *D'Oench, Duhme* and section 1823(e) bar the Kennellys' counterclaims and defenses against the RTC, and the Kennellys assert no counterclaims nor raise any defenses that are not barred by these two doctrines. Accordingly, the district court's grant of summary judgment in favor of the RTC is

**AFFIRMED.**

---

**3.** There is serious doubt whether *D'Oench, Duhme* survives *O'Melveny & Myers v. FDIC*, —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

Because the issue was not briefed, we leave it for another day.