In re Shirley Jean CARPENTER, Debtor.

Shirley Jean CARPENTER, Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Mechanics National Bank, a National Banking Association; United States of America, by and through the Small Business Administration, an agency of the United States of America, Appellees.

BAP No. CC–96–1162–OHV.
Bankruptcy No. LA–95–24756 BR.
Adv. No. 95–03171 BR.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Nov. 20, 1996.

Decided Feb. 14, 1997.

Phillip R. Kimes, Irvine, CA, for Shirley Jean Carpenter.

Tomson T. Ong, Assistant U.S. Attorney, Los Angeles, CA, for U.S.A. (S.B.A.).

Gregory E. Gore, Washington, DC, for F.D.I.C.

Before: OLLASON, HAGAN and VOLINN, Bankruptcy Judges.

### OPINION

OLLASON, Bankruptcy Judge:

Shirley Jean Carpenter ("Debtor") appeals the bankruptcy court's order dismissing her adversary proceeding with prejudice for fail-

ure to state a claim upon which relief could be granted. Debtor asserted state law and federal common law defenses against her guaranty which was enforced by the Federal Deposit Insurance Corporation ("FDIC") in its capacity as receiver for an insolvent bank. The bankruptcy court determined *inter alia,* that her claims were barred by the *D'Oench, Duhme* doctrine and FIRREA.[1] **We Affirm.**

## STATEMENT OF FACTS

Debtor's husband, Howard, was president of a business known as Brake Meir Truckload, Inc., and the Carpenters were joint owners of their real property residence located in Glendale, California. On December 4, 1989, Howard, on behalf of Brake Meir, entered into a written contract for a business loan of $500,000 with Mechanic's Bank ("bank"). The bank was a lender in the Preferred Lender Program ("PLP") and the authorized agent of the Small Business Administration ("SBA"). Under "collateral" the loan agreement listed the residence, the business real property and business assets. Under "covenants," the loan agreement required Brake Meir to "maintain a life insurance policy on the life of Howard & Shirley Carpenter in the amount of $500,000.00 throughout the course of the loan and assign to [the bank] an absolute collateral assignment of that policy." On January 18, 1990, Howard and the bank executed the Authorization and Loan Agreement ("authorization agreement"), which listed under "collateral" the life insurance policy assignment.

On January 18, 1990, the Carpenters executed individual guaranties, which stated that they were secured by a second lien on the property; the Carpenters also executed a deed of trust on the property. Debtor's guaranty recited that the indebtedness was unconditionally guaranteed. It also stated that the bank could, without the guarantor's consent, deal in any manner, including a forbearance, with respect to property

pledged, mortgaged or assigned to secure the note. The loan and authorization agreements did not require Debtor to sign a guaranty. The guaranty and deed of trust were the only documents signed by Debtor.

On January 19, 1990, Howard, on behalf of Brake Meir, wrote a letter to the bank asking that it waive the life insurance policy assignment requirement because he was unable to obtain insurance. The bank wrote to the SBA on February 6, 1990, requesting a waiver of the provision. On February 13, 1990, the SBA stamped the letter stating that "SBA concurrence not required. Credit decision PLP loan."[2] Without further notice to or obtaining Debtor's consent, the bank waived the assignment and disbursed the loan in February, 1990, to Brake Meir.

It was undisputed that the agreement to waive the life insurance policy assignment was not: (1) in writing; (2) approved by the board of directors of the bank or its loan committee; (3) reflected in the minutes of the bank's board of directors or loan committee; or (4) maintained as an official record of the bank.[3]

Brake Meir failed to pay on the note. The bank recorded a Notice of Default and Election to Sell Under Deed of Trust on January 22, 1991. A Notice of Trustee's Sale was recorded on July 10, 1991.

Howard died on June 14, 1991. The bank filed a claim for loans to Brake Meir against Howard's probate estate. The claim was allowed for $499,957, but was not paid.

On January 13, 1994, a foreclosure sale of the residence was conducted under the sale provisions of the trust deed. The bank purchased the property by a credit bid of approximately $220,000. The trustee's deed was recorded on January 24, 1994.

On April 1, 1994, the bank was declared insolvent. The FDIC was appointed receiver of the bank and succeeded to all its rights, titles, powers and privileges. *See* 12 U.S.C.

---

1. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183; 12 U.S.C. §§ 1821 and 1823.

2. As a PLP member, the bank had unilateral authority to make reasonable remedial adjustments in terms and conditions of the SBA guaranteed loans.

3. *See* Bankruptcy Court's Findings of Fact, par. 29.

§ 1821(d)(2)(A)(i). On April 11, 1994, the FDIC, as receiver, transferred legal title to the property to the SBA by quitclaim deed, but retained a 15% ownership interest.[4] The SBA did not record the deed until March 31, 1995.

On July 15, 1994, Debtor filed a claim with the FDIC for cancellation of the trustee's deed and the foreclosure sale. The FDIC did not formally deny her claim until August 28, 1995.[5]

Facing liability under the note pursuant to her guaranty, and evicted from her former residence,[6] Debtor filed a chapter 13 [7] bankruptcy petition on June 12, 1995. The FDIC and SBA are creditors of Debtor's bankruptcy estate, holding liens on other estate property in connection with the same loan debt.[8] The SBA also filed a proof of claim for monies owed by Debtor for her occupancy of the property.[9]

Debtor filed her original complaint on August 2, 1995. In her first amended complaint, filed on September 14, 1995, she sought, *inter alia*, a declaration from the court that the guaranty, the trust deed, the trustee's deed and quitclaim deed were void, and to quiet title against the SBA. Debtor asserted surety defenses, claiming that she was exonerated under the guaranty. Since the proceeds from the life insurance policy would have satisfied the loan debt, the waiver of the life insurance collateral impaired the security for the loan, she alleged. Debtor contended that her consent was necessary to waive the provision, but that she neither received notice of the waiver nor consented to it.

In September of 1995, the FDIC moved to dismiss the complaint as raising claims barred by 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine, among other arguments. The SBA joined. Following a hearing, the bankruptcy court entered an order granting the motion to dismiss on December 14, 1995, as well as its findings of fact and conclusions of law. The bankruptcy court concluded, *inter alia*, that the claims against the FDIC were barred by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). Debtor's motion for reconsideration was denied and she timely appealed the underlying judgment only.

## ISSUES

1. Whether the bankruptcy court lacked subject matter jurisdiction.

2. Whether Debtor's claims are barred by FIRREA.[10]

## STANDARD OF REVIEW

An objection to subject matter jurisdiction may be raised at any time by any party or the court. *Intercontinental Travel*

---

4. On April 24, 1994, the SBA executed a Certificate of Interest pursuant to a Letter of Understanding, which stated that the "FDIC as receiver for Mechanics National Bank ... has retained an ownership interest of fifteen (15)% of the real property. . . ."

5. The FDIC contends that when it failed to act within 180 days, the claim was deemed denied and Debtor had 60 days, or until March 17, 1995, to file suit, pursuant to 12 U.S.C. § 1821(d)(6)(A). However, the SBA states that the claim was denied as a matter of law on August 28, 1995. On that date, the FDIC sent Debtor a Notice of Disallowance, indicating that she had 60 days from the date of the notice in which to file a lawsuit in district court. Debtor filed her complaint in bankruptcy court within the latter 60-day period.

6. The FDIC won an unlawful detainer judgment in 1994, which Debtor appealed. She re-entered the property. Subsequently, the SBA was awarded an unlawful detainer judgment in 1995.

7. Unless otherwise indicated, references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

8. *See* First Amended Complaint, p. 11, par. 30.

9. The record does not contain a copy of the proof of claim. The Panel takes judicial notice of a claim in the bankruptcy court records. *In re Blumer*, 95 B.R. 143, 146 (9th Cir. BAP 1988) (a court may take judicial notice of its own records).

10. Debtor has raised other issues that the Panel need not reach, including whether: (1) Debtor may assert state law defenses as federal common law; (2) the *D'Oench, Duhme* doctrine has been overruled by *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994); (3) Debtor may assert state law claims or defenses, and if so, if they are barred by the limitations statute Cal.Civ.Proc.Code § 340(3) (West 1982).

*Marketing, Inc. v. FDIC,* 45 F.3d 1278, 1286 (9th Cir.1994). The Panel reviews the existence of subject matter jurisdiction *de novo. Id.* at 1282. The Panel may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993).

■ A dismissal for failure to state a claim pursuant to Fed.R.Bankr.P. 7012/ Fed.R.Civ.P. 12(b)(6) is reviewed *de novo. In re Saylor,* 178 B.R. 209, 212 (9th Cir. BAP 1995). Review is limited to the contents of the complaint. *In re Aboukhater,* 165 B.R. 904, 909 (9th Cir. BAP 1994). However, exhibits attached to the complaint, as well as matters of public record may be considered in determining whether dismissal was proper without converting to the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986).

All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Everest and Jennings, Inc. v. Am. Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the alleged facts. *United States ex. rel. Chunie v. Ringrose,* 788 F.2d 638, 643 n. 2 (9th Cir.), *cert. denied,* 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986). When the allegations in the complaint are refuted by the attached documents, the allegations do not have to be construed as true. *Roth v. Garcia Marquez,* 942 F.2d 617, 625 (9th Cir.1991).

The Panel does not affirm the judgment granting the motion to dismiss unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Mier v.*

*Owens,* 57 F.3d 747, 750 (9th Cir.1995), *cert. denied sub nom. Mier v. Van Dyke,* — U.S. ——, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996). The bankruptcy court may dismiss a complaint as a matter of law for "(1) lack of a cognizable theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984).

## DISCUSSION

### 1. Subject Matter Jurisdiction

■ Section 1821(d)(3)(A) of FIRREA provides the FDIC, acting in its capacity as receiver, with the authority to determine claims against a failed depository institution and bars courts from asserting jurisdiction.[11] Claimants must exhaust the FDIC's claims process before seeking district court or bankruptcy court review. *RTC v. Midwest Fed. Sav. Bank of Minot,* 36 F.3d 785, 791 (9th Cir.1993) (as amended 1994). FIRREA "strips all courts of jurisdiction over claims made outside the administrative procedures." *Henderson v. Bank of New England,* 986 F.2d 319, 320 (9th Cir.) (citing H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 419, *reprinted in* 1989 U.S.C.C.A.N. 87, 215), *cert. denied,* 510 U.S. 995, 114 S.Ct. 559, 126 L.Ed.2d 459 (1993).

Section 1821(d)(5)(A)(i) provides:

Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

12 U.S.C. § 1821 (1994 ed.).

Section 1821(d)(6)(A) provides:

Before the end of the 60–day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

---

**11.** Section 1821(d)(13)(D) states that "no court shall have jurisdiction over ... any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Cor-

poration has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; ..." 12 U.S.C. § 1821 (1994 ed.).

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim ... or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States....

12 U.S.C. § 1821 (1994 ed.).

Section 1821(d)(6)(B) provides a limitations period for such claims:

If any claimant fails to—

(i) request administrative review of any claim ...; or

(ii) file suit on such claim (or continue an action commenced before the appointment of the receiver),

before the end of the 60–day period described in subparagraph (A), the claim shall be deemed to be disallowed ... as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

12 U.S.C. § 1821 (1994 ed.).

Debtor filed her claim with the FDIC on July 15, 1994. The FDIC did not act within 180 days, and Debtor failed to file suit within 60 days, or by March 17, 1995. The FDIC contends that when Debtor failed to file suit within the time allowed following the deemed denial of her claim, the subsequent notice of disallowance sent on August 28, 1995, was a nullity because Debtor's rights had already been precluded by operation of 12 U.S.C. § 1821(d)(6)(B). This argument is technically correct, since § 1821(d)(6)(A) provides that

the 60–day period commences at *the earlier* of the end of the 180–day period or the date of a notice of disallowance. Debtor's complaint in bankruptcy court was filed after March 17, 1995, therefore, if she were required to exhaust the administrative remedy, the bankruptcy court would not have jurisdiction.

The Ninth Circuit Court of Appeals has held that the FIRREA administrative claim procedures and jurisdictional bar are inapplicable to affirmative defenses (or claims that are in substance affirmative defenses) that arise incidentally to the bankruptcy court's determination of a claim against the debtor. *In re Parker North Am. Corp.,* 24 F.3d 1145, 1151–54 (9th Cir.1994) ("claimants" under § 1821(i)(2) are creditors, not debtors, of the financial institution).[12] *Accord In re Miraj and Sons, Inc.,* 192 B.R. 297, 310 (Bankr. D.Mass.1996); *In re All Season's Kitchen, Inc.,* 145 B.R. 391, 393–96 (Bankr.D.Vt.1992); *In re Scott,* 157 B.R. 297 (Bankr.W.D.Tex. 1993), *op. withdrawn,* 162 B.R. 1004 (Bankr. W.D.Tex.1994) (cited by *Parker* for its reasoning). *See also Freeman v. FDIC,* 56 F.3d 1394, 1401 (D.C.Cir.1995) (declining to extend approach of bankruptcy cases to nonbankruptcy court context).[13]

The concern underlying these cases is clear: if bankruptcy courts are ousted of jurisdiction over a broad class of claims under the § 1821(d) jurisdictional bar, the unity of the bankruptcy process may be fractured and some bankruptcy-related claims would be determined, at least in the first instance, by FDIC administrative tri-

---

**12.** *Parker* looked to the legislative history of FIRREA which did not evidence an intention to deprive the bankruptcy court of jurisdiction to determine issues related to debtors. *Parker,* 24 F.3d at 1153. *Parker* did not find support for jurisdiction either under the "broad brush" of former § 106(a), the waiver of sovereign immunity provision. *Id.* at 1151–52 (FIRREA's specific claims process supersedes the Code's general waiver of sovereign immunity). Now that the Code has been amended to specify that sovereign immunity is waived where the governmental unit has filed a proof of claim, such specific language should supersede FIRREA, and Debtor so argues. The Panel need not reach this issue, however, because we find jurisdiction on other grounds.

**13.** *But see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.,* 28 F.3d 376, 392 (3d Cir.1994) (jurisdictional bar is not limited to actions brought by creditors but applies to debtors as well). *See also In re Washington Bancorp.,* 1996 WL 148533, No. 90–00597, at *7–8 (D.D.C., March 19, 1996) (counterclaims as opposed to affirmative defenses are barred, including declaratory judgment actions, citing *Midwest,* 36 F.3d at 792–93). *Parker* also cited this holding of *Midwest* as additional authority. *Parker,* 24 F.3d at 1155.

bunals, which (it is argued) have little expertise in bankruptcy matters.

*Freeman,* 56 F.3d at 1401.

The FDIC and SBA are creditors of Debtor's bankruptcy estate, and the SBA has filed a proof of claim. Therefore, the bankruptcy court had jurisdiction over Debtor's claims.

### 2. 12 U.S.C. § 1823(e) Bar

■ Congress codified the *D'Oench, Duhme* doctrine in § 1823(e), which bars both claims and affirmative defenses against the FDIC as receiver. *See E.I. du Pont de Nemours and Co. v. FDIC,* 32 F.3d 592, 596 (D.C.Cir.1994). The *D'Oench, Duhme* doctrine "is a principle of equitable estoppel that permits bank examiners to rely on the records of a bank in evaluating the bank's financial condition, by protecting the bank authorities from suits founded on undisclosed conditions or deceptive documents." *Brookside Assocs. v. Rifkin,* 49 F.3d 490, 493 (9th Cir.1995). It also prevents borrowers from using secret or unrecorded side agreements to defend against efforts by the FDIC or its assignees to collect on promissory notes acquired from a failed bank. *D'Oench, Duhme,* 315 U.S. at 460–61, 62 S.Ct. at 680–81.

Section 1823(e) states:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823 (1994 ed.)

"Although similar in purpose to the common law doctrine, section 1823(e) 'makes the common law principle both more encompassing and more precise.'" *Midwest,* 36 F.3d at 795 (quoting *FDIC v. O'Neil,* 809 F.2d 350, 353 (7th Cir.1987)).

*D'Oench* precludes obligors from asserting side deals or secret agreements which may mislead bank examiners against the FDIC to diminish the value of written loan obligations. Section 1823(e) bars the use of extrinsic agreements to diminish or defeat the FDIC's interest in an asset, unless the documents meet specific requirements. Together, their effect is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets."

*FDIC v. Zook Bros. Constr. Co.,* 973 F.2d 1448, 1450–51 (9th Cir.1992) (quoting *Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987)); *see also RTC v. Kennelly,* 57 F.3d 819, 821 (9th Cir.1995).

"The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails ...; and an agreement that does not meet them fails.... It would be rewriting the statute to hold otherwise."

*Midwest,* 36 F.3d at 795 (quoting *Langley,* 484 U.S. at 95, 108 S.Ct. at 403).[14]

---

14. Under the facts of this case, it does not matter if we decide that Debtor's claims are barred by FIRREA rather than the *D'Oench, Duhme* doctrine, because the basis for the claims is the waiver agreement which is plainly addressed by 12 U.S.C. § 1823(e). *See O'Melveny,* 512 U.S. at 85, 114 S.Ct. at 2054 (matters left unaddressed in a federal statutory regulation scheme are "pre-

sumably left subject to the disposition provided by state law"); *United States v. Northrop Corp.,* 59 F.3d 953, 961 (9th Cir.1995) (*O'Melveny* stated that state law only "presumptively controls" to fill gaps in detailed statutory schemes), *cert. denied sub nom. Northrop Grumman Corp. v. United States ex rel. Green,* — U.S. —, 116 S.Ct. 2550, 135 L.Ed.2d 1069 (1996).

The exhibits to the complaint show that the life insurance collateral waiver was an "agreement" under the expansive interpretation of this term under FIRREA. *See Cote d'Azur Homeowners Ass'n v. Venture Corp.*, 846 F.Supp. 827, 836 n. 16 (N.D.Cal.1994) (a "wide range of conditions, oral or written" are agreements for the purpose of the statute); *Midwest*, 36 F.3d at 794 (finding nonrecourse term of loan commitment letter to be an agreement under § 1823(e)).

The waiver agreement did not meet the requirements for a valid agreement under § 1823(e). It was not a document signed by both parties. The waiver agreement was not part of the bank's official records. It was not officially approved by the bank's loan committee or board of directors, as reflected in the corporate minutes, notwithstanding the bank's February 6, 1990, letter to the SBA.

Debtor contends that the waiver agreement should be construed with the other loan documents to meet the bilateral obligation exception to § 1823(e) recognized by the Seventh Circuit Court of Appeals in *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir.1981), and adopted by the Ninth Circuit in *FSLIC v. Gemini Mgmt.*, 921 F.2d 241, 245–46 (9th Cir.1990) (*D'Oench, Duhme* doctrine applied to agreement in commitment letter where letter was not evidenced by a note and expired on its own terms; letter was not a clear and explicit bilateral agreement). *See also Midwest*, 36 F.3d at 794 (undocumented commitment letter was bilateral obligation because its provisions were corroborated by minutes of the board of directors approving the loan with the same provision, and the board's submission form describing the loan to the members prior to approval).

In *Howell*, a television station owner ("Howell") decided to restructure equipment purchases as leases, which became collateral for bank loans. When the bank was declared insolvent, the FDIC as receiver contended that the leases were valid and enforceable. It argued that Howell was estopped by § 1823(e) from raising a breach of the leases defense based on an oral agreement. The Seventh Circuit Court of Appeals disagreed with the FDIC, distinguishing between the leases and a situation where the FDIC seeks "to enforce a facially valid note or guarantee imposing a unilateral obligation on the maker to pay a sum certain amount to the bank." *Howell*, 655 F.2d at 746. It held that the leases facially manifested bilateral obligations and were the basis of Howell's defense; in addition, the FDIC sought to enforce the leases which were in its files. The court held that when "the asset upon which the FDIC is attempting to recover is the very same agreement that the makers allege has been breached, § 1823(e) does not apply." *Id.* at 747.

In California, "[a] bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both ·a promisor and a promisee." *Davis v. Jacoby*, 1 Cal.2d 370, 34 P.2d 1026, 1029 (1934) (citing former RESTATEMENT, CONTRACTS § 12). In a bilateral contract, the promise of one party is consideration for that of another. *Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1453 (9th Cir.1996).[15]

The Panel holds that the waiver agreement was not a bilateral agreement falling under the exception, and declines to construe all of the loan documents as one document in this analysis.[16] While the bank agreed to extend

---

**15.** This case cited with approval the doctrine of mutuality as applied to bilateral contracts in California. 78 F.3d at 1453. Thus, California law still recognizes the fundamental distinctions between bilateral and unilateral contracts, although the Second Restatement did not carry forward the original definitions, as the American Law Institute doubted their utility. *See* RESTATEMENT (SECOND) CONTRACTS § 1, Reporter's Note to cmt. f (1982).

**16.** Other circuits have extended the bilateral obligation exception to include agreements contained in closely related or integral loan docu-

ments in the bank's records. *See Levy v. FDIC*, 7 F.3d 1054, 1058 (1st Cir.1993); *RTC v. Oaks Apartments Joint Venture*, 966 F.2d 995, 1000–01 (5th Cir.1992); *Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1517–18 (11th Cir. 1991), *cert. denied*, 504 U.S. 908, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992). *Cf. Gemini*, 921 F.2d at 245 (*D'Oench, Duhme* doctrine applied to agreement in commitment letter where letter was not evidenced by a promissory note, and expired on its own terms). Debtor cites *Midwest* for the proposition that the Ninth Circuit has recognized such an extension. But *Midwest* followed *Gemini* and distinguished the facts on the basis of

the loan without the life insurance assignment, it did not make a new promise. It had already promised to extend the loan. Brake Meir did not make a new promise, either. There were no new or modified documents executed by the parties in connection with the side agreement. When the FDIC took control of the bank's assets, it did not have official notice of the waiver agreement. It enforced the existing documents, *i.e.*, the loan agreement, the loan authorization agreement, the guaranty and the deed of trust, which did not evidence a waiver. In addition, Debtor was not a signatory of the loan agreement, the loan authorization agreement—which contained the life insurance provision, or of the letter requesting the waiver. However, Debtor signed an unconditional guaranty.

This case is similar to the facts in *Zook Bros.* There, the wife of the borrower executed a personal guaranty of her husband's loan with the bank. She was not asked to nor did she sign a new loan consolidation agreement, which she stated materially altered the 1979 credit agreement for which she signed the guaranty. She claimed that since she had not given her consent, under Illinois law, she was released from her obligations under the guaranty. *Zook Bros.*, 973 F.2d at 1450. The Ninth Circuit Court of Appeals held that the FDIC's power to enforce Zook's guaranty was defined by § 1823(e) and the *D'Oench, Duhme* doctrine. As neither loan agreements met the statutory *D'Oench, Duhme* provisions, Zook's guaranty, which was facially valid, controlled and bound her.[17] *Id.* at 1452; *see also Kennelly*, 57 F.3d at 822. Similarly, Debtor's guaranty was valid and enforceable. Although Debtor raised several defenses to the *D'Oench, Duhme* doctrine, she cannot assert these defenses against the statutory provision of § 1823(e), which plainly bars her claims against the FDIC and the SBA, as the successor-in-interest to the property.[18]

## CONCLUSION

The bankruptcy court had subject matter jurisdiction over Debtor's claims. However, the claims were barred by FIRREA, 12 U.S.C. § 1823(e), because they raised defenses to enforceable and enforced documents based on an invalid side agreement under federal law. As Debtor's complaint failed to state a cause of action for which relief could be granted, the bankruptcy court's order of dismissal is hereby **AFFIRMED.**

---

other evidence in the formal bank records which reflected the same terms as in the subject commitment letter. *See Midwest*, 36 F.3d at 794. *Midwest* recognized that § 1823(e) does not require that an agreement be "confined to the face of any one particular lending/borrowing document." *Id.* at 798. However, its holding is not consistent with the proposition that the waiver agreement may be construed as part of other loan documents which do not reflect the same terms. "[S]cattered evidence in corporate records from which one could infer the existence of an agreement does not meet the requirements of the statute." *Id.* at 798 (quoting *Castleglen, Inc. v. RTC*, 984 F.2d 1571, 1579 (10th Cir.1993)). In the instant case, the terms of the waiver agreement were not reflected in the loan documents or officially recorded.

17. Debtor gives no legal basis why the guarantee is void rather than voidable. The FDIC is enti-

tled to the protection of § 1823(e) when an agreement is voidable. *Notrica v. FDIC*, 2 F.3d 961, 965 (9th Cir.1993).

18. Debtor raises for the first time in her Reply Brief the argument that FIRREA does not control the quiet title action against the SBA, and cites the federal quiet title provisions, 28 U.S.C. §§ 1346(f) and 2409(a). The Panel declines to consider the new issue of whether such an action exists against the SBA, where questions of fact and law related to such a claim were not raised below. *In re Kirkland*, 915 F.2d 1236, 1241 n. 7 (9th Cir.1990). Debtor has made no other valid argument as to why her claims against the FDIC should not apply to the SBA as its transferee since the claims concern the legality of the FDIC's interest in the property and not an affirmative act by the SBA.