**Mark R. KIVITZ**

v.

**The CIT GROUP/SALES FINANCE, INC.**

**No. JFM–99–931.**

United States District Court, D. Maryland.

March 15, 2000.

---

Marc R. Kivitz, Law Office, Baltimore, MD, pro se.

Earl F. Leitess, Katherine Ann Levin, Leitess, Leitess & Friedberg, P.C., Baltimore, MD, for CIT Group/Sales Finance, Inc.

Jeannie Coltrane Lightsey, U.S. Trustee's Office, Baltimore, MD, for W. Clarkson McDow.

Howard A. Rubenstein, Law Office, Baltimore, MD, for Robert Wolf.

## MEMORANDUM

MOTZ, District Judge.

Mark R. Kivitz, the former attorney for the debtor (White Marlin Marine, Inc.), has appealed an order by the Bankruptcy Court declining to surcharge CIT's collateral in order to pay fees for services performed by Kivitz to the debtor in a Chapter 11 case. The order will be affirmed.[1]

### I.

As a general rule, administrative costs of a reorganization, including attorneys' fees incurred in connection with efforts to reorganize the debtor, may not be charged against the collateral of a secured creditor. *See In re Pullman Constr. Indus., Inc.,* 107 B.R. 909, 942 (Bankr. N.D.Ill.1989). Section 506(c) of Title 11 provides an exception to allow a surcharge for reasonable and necessary expenses where the trustee has (1) incurred the expenses in preserving or disposing of the debtor's property, and (2) benefitted the secured creditor by its actions. The reason for the rule is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs and to require the secured party to bear the cost of preserving or disposing of its own collateral. *See In re Codesco, Inc.* 18 B.R. 225, 229 (Bankr.S.D.N.Y.1982); *In re Visual Indus., Inc.,* 57 F.3d 321, 325 (3rd Cir.1995). Typically, § 506(c) is applied to cover expenses such as storage costs. *Id.*

In this case the services performed by Kivitz conferred no special benefit upon CIT but simply were in furtherance of the general goal of reorganization. Nevertheless, relying upon *IRS v. Boatmen's First Nat'l Bank of Kansas City,* 5 F.3d 1157 (8th Cir.1993), Kivitz argues that since CIT supported and cooperated in the attempted reorganization, his claims for services falls with § 506(c). It is true, as Kivitz argues, that in *Boatmen's* the claims for which the surcharge were allowed were incurred for the purpose of keeping the debtor's business alive. There is a critical difference between *Boatmen's* and the present case, however. Here, the ultimate purpose of the attempted reorganization was to keep the debtor in business after it emerged from bankruptcy. In *Boatmen's,* on the other hand, the debtor's business was being maintained during the bankruptcy solely for the purpose of preserving the going concern values of its stores that were being sold by the trustee during the bankruptcy proceedings. If, as Kivitz urges, the ruling in *Boatmen's* were to be extended to cases such as this, secured creditors, such as CIT, would be deterred from supporting and cooperating in a debtor's reorganization. Such a result is fundamentally contrary to the policies underlying Chapter 11 proceedings.

### II.

Kivitz next argues that various actions of CIT constituted a consent to the surcharge of his collateral. I will briefly address each of his contentions.

First, Kivitz asserts that CIT consented to the surcharge by invoking the processes of the Bankruptcy Court for its own benefit. The short answer to this contention is that it was the debtor, not CIT, that commenced bankruptcy proceedings and who sought authority to use cash collateral. CIT hired and paid its own counsel to represent it in the bankruptcy proceedings. *In re Hotel Assocs., Inc.,* 6

---

1. This appeal has been pending for almost a year. In light of the age of the case and the importance of avoiding further delay in decision, I will dispense with any discussion of the facts and assume that the reader of this opinion has a working knowledge of the governing rules and principles.

B.R. 108 (Bankr.E.D.Pa.1980), relied upon by Kivitz, is distinguishable. There, it was the secured creditor's own motion that resulted in the appointment of a trustee, the costs for whom the secured creditor's collateral was surcharged.

■ Second, Kivitz argues that CIT consented to the surcharge by entering into the cash collateral order. That contention borders on the frivolous. The cash collateral order simply provided for a surcharge *if* the court ultimately ordered such a surcharge.[2]

Third, Kivitz argues that CIT consented to a surcharge by not objecting to the June 29, 1998 compensation order containing an authorization for a surcharge. In fact, CIT did object to that order by filing a joint emergency motion to vacate the order on July 9, 1998. That motion resulted in the entry of another compensation order on August 10, 1998, specifically vacating the grant of a surcharge.

Fourth, Kivitz' argument that CIT's consent to surcharge can be inferred from its consent to the post-petition financing order is contradicted by the very terms of that order. It requires CIT's prior written consent to a surcharge for priority claims and administrative expenses. CIT never provided such written consent.

Fifth, Kivitz' contention that an April 17, 1998 order maintaining the provisions of the cash collateral order constitutes a consent to a surcharge fails for the reason that, as stated above, the cash collateral order itself does not constitute a consent to a surcharge.

■ Finally, Kivitz' reliance on a compensation order entered on August 10, 1998, is misplaced since that order applies to $40,386.49 in compensation that was, in fact, paid to Kivitz and is not an issue in this case.[3]

A separate order affirming the Bankruptcy Court's order is being entered herewith.

---

2. The order did provide Kivitz with an equal priority for his fees and costs up to $50,000. However, Kivitz has previously recovered fees and costs in excess of $50,000.

3. Although denying Kivitz a surcharge, the Bankruptcy Court did award him fees and expenses in the amount of $16,000. This award was somewhat less than that requested by Kivitz, and Kivitz has appealed that decision as well. As a practical matter, the issue appears to be mooted by the fact that I am affirming the Bankruptcy Court's order denying surcharge. In any event, the Bankruptcy Court, which had first-hand knowledge of the value of the services rendered by Kivitz, is in a far better position than is this court to determine the compensation to which he would be due. Kivitz has not demonstrated that the Bankruptcy Court abused its discretion in determining the amount of its award.